## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

JAMES L.,                                       )
                                                )
         **Plaintiff,**                         )
                                                )          **Case No. 18-CV-344-JFJ**
v.                                              )
                                                )
**ANDREW M. SAUL,**                             )
**Commissioner,**                               )
**Social Security Administration,**             )
                                                )
         **Defendant.**                         )

## OPINION AND ORDER

Plaintiff James L. seeks judicial review of the decision of the Commissioner of the Social

Security Administration denying his claim for disability insurance benefits under Title II of the

Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423.  In accordance with 28 U.S.C. § 636(c)(1)

& (3), the parties have consented to proceed before a United States Magistrate Judge.

For reasons explained below, the Court reverses the Commissioner's decision denying

benefits and remands for further proceedings.  Any appeal of this decision will be directly to the

Tenth Circuit Court of Appeals.

## I.      Standard of Review

In reviewing a decision of the Commissioner, the Court is limited to determining whether

the Commissioner applied the correct legal standards and whether the decision is supported by

substantial evidence.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  "Substantial

evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th

Cir. 1994)).  A decision "is not based on substantial evidence if it is overwhelmed by other

evidence in the record or if there is a mere scintilla of evidence supporting it."  *Hamlin v. Barnhart*,

365 F.3d 1208, 1214 (10th Cir. 2004) (quotations omitted). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1261 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 52-year-old male, applied for Title II benefits on April 9, 2015, alleging a disability onset date of December 1, 2014. R. 146. Plaintiff claimed that he was unable to work due to disorders including back injury, diabetes, sciatica, hearing loss, arthritis, and neck mobility. R. 193. Plaintiff's claim for benefits was denied initially on July 30, 2015, and on reconsideration on August 27, 2015. R. 58-62; 64-66. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ conducted the hearing on April 7, 2017. R. 22-37. The ALJ issued a decision on June 14, 2017, denying benefits and finding Plaintiff not disabled because he was able to perform his past relevant work as a vocational instructor. R. 17. As an alternative finding at step five, the ALJ also found Plaintiff capable of performing the jobs of cashier II and office helper. R. 8-18. The Appeals Council denied review, and Plaintiff appealed. R. 1-5; ECF No. 2.

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2018, and that he had not engaged in substantial gainful activity since his alleged onset date of December 1, 2014. R. 13. The ALJ found that Plaintiff had the following severe

impairments: diabetes mellitus, degenerative disc disease of the lumbar spine, and obesity. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments of such severity to result in listing-level impairments. *Id.*

With respect to objective evidence in the record, the ALJ noted records from the Veterans' Administration Medical Center showing a lumbar spine MRI performed December 9, 2014, which revealed "multilevel degenerative changes involving the lumbar spine, with associated multilevel central canal and neural foraminal outlet narrowing of varying degrees as described, affecting T11 through S1," and cervical spine radiology reports from December 1, 2014, which showed stable C5, C6, and C7 cervical fusion. R. 15. On July 7, 2015, Sam Worrall, D.O. performed a consultative audiology examination with essentially normal findings. R. 15. The ALJ summarized Plaintiff's complaints and visits to Dr. Joseph Koenig, M.D. between February 2013 and July 25, 2014 as "mainly for right ankle pain, back pain and diabetes," without listing any objective testing or findings. *Id.* The ALJ next noted Plaintiff's October 14, 2015, visit to Dr. Koenig wherein examination revealed tenderness and decreased range of motion in the cervical and lumbar spine, and the lumbar spine also showed pain and spasm. Dr. Koenig diagnosed diabetes mellitus with neurological manifestations, uncontrolled; mixed hyperlipidemia; cervicalgia; pain in joint, ankle and foot, right; and bilateral low back pain with right-side sciatica. *Id.* The ALJ discussed x-rays of Plaintiff's left foot in June 2016, which revealed "very mild degenerative changes at the interphalangeal joints," and the "fifth ray" was radiographically intact. R. 16. The x-ray also showed mild soft tissue that might be a bunionette, and "small plantar and tine posterior calcaneal spurs." Plaintiff's foot pain was resolved in September 2016. *Id.*

With respect to the opinion evidence in the record, the ALJ summarized Dr. Koenig's October 14, 2015, Medical Source Statement[1] before giving the opinion "no weight." R. 15, 17. The ALJ gave "considerable weight" to the opinions of agency medical consultants Janet Rodgers, M.D., and David Coffman, M.D. R. 16. Both opinions state that Plaintiff could perform at a *less than light* exertional level, with limited hearing in both ears. *Id.* (emphasis added). Finally, the ALJ "took into consideration" the 30% service-connected disability rating from the Department of Veterans Affairs, noting that the two agencies' disability determination processes are different. R. 17.

After evaluating the record and opinion evidence, the ALJ concluded that Plaintiff has the RFC to perform "the full range of light work as defined in 20 CFR 404.1567(b), that is, lift and/or carry twenty pounds occasionally, ten pounds frequently, stand and/or walk at least six hours in an eight-hour workday, and sit at least six hours" with no additional limitations. R. 14. The ALJ found at step four that Plaintiff was able to return to his past relevant work as a vocational instructor. R. 17. Based on the testimony of a vocational expert ("VE"), the ALJ made the alternate finding at step five that Plaintiff could perform other work, such as cashier II, and office helper. R. 17-18. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 18. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

## III.    Issues

Plaintiff raises two points of error in his challenge to the denial of benefits: (1) the ALJ committed reversible legal error by failing to properly evaluate Dr. Koenig's treating source

---

[1] Dr. Koenig's opinion is discussed in more detail below in the Court's analysis.

opinion; and (2) the ALJ committed reversible error by failing to recognize and address the fact that Plaintiff fell within a borderline age situation.[2]  ECF No. 15.  The Court finds that the ALJ committed reversible error by failing to properly evaluate the treating source opinion of Dr. Koenig.  Because Dr. Koenig's treating source opinion must be reevaluated, the rest of the decision may be affected by this reevaluation.  Therefore, the Court does not reach the remaining allegation of error.  *See Robinson v. Barnhart* 366 F.3d 1078, 1085 (10th Cir. 2004) ("We will not reach the remaining issues raised by claimant because they may be affected by the ALJ's resolution of this case on remand.").

## IV.      Analysis – ALJ Erred in Treatment of Dr. Koenig's Treating Source Opinion[3]

Generally, the ALJ should give more weight to medical opinions from a claimant's treating sources.  20 C.F.R. § 404.1527(c)(2); *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987) (stating that, "opinions of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim") (quoting *Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir. 1983)) (quotation marks omitted).  Indeed, the ALJ must give an opinion from a treating source controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not

---

[2] Because the ALJ decided Plaintiff's case at step four, he was not required to determine whether Plaintiff's age was a factor.  However, since the case is being remanded for further consideration, Plaintiff's age category may also need to be considered.

[3] Plaintiff received regular care from Dr. Koenig from February 1, 2013 through October 14, 2015.  R. 333-361, 366-368, 370-379.  The Commissioner does not dispute that Dr. Koenig is a treating physician.  *See* 20 C.F.R. § 404.1527(a)(2) ("Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.").

inconsistent with the other substantial evidence in [the] case record." *Id. See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

If the ALJ does not give a treating source's medical opinion controlling weight, the ALJ will consider six factors to determine the weight to give to the opinion: (1) the examining relationship; (2) the length, nature, and extent of the treatment relationship; (3) supportability of the opinion with relevant evidence; (4) consistency of the opinion with the record as a whole; (5) specialization of the medical source; and (6) any other factors that may support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must always give "good reasons" for the weight given to a treating source's medical opinion. 20 C.F.R. § 404.1527(c)(2). If the ALJ rejects the opinion, he must give "specific, legitimate reasons" for his assessment, based on an evaluation of all the regulatory factors. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (quotation omitted). Although the ALJ's decision "need not include an *explicit* discussion of each factor," the record must reflect that the ALJ considered every relevant factor in the weight calculation. *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009). The question for the reviewing court is whether the ALJ's decision contains specific reasons that make clear the weight assigned to the medical source opinion and the reasons for that weight. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that the proper inquiry is whether the reviewing court "can follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied").

Further, an ALJ must generally "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Generally, it is "improper for the ALJ to pick and choose among medical

reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

In this case, Dr. Koenig completed a medical source statement addressing his opinion of Plaintiff's ability to perform specific physical work-related activities on October 14, 2015. R. 366-368. In this assessment, Dr. Koenig opined that Plaintiff could stand and/or walk thirty minutes to an hour at a time before needing to sit or lie down, and could stand and/or walk a total of less than two hours in an eight-hour workday. R. 366. Dr. Koenig opined that Plaintiff could only sit thirty minutes to an hour at one time, and that he could sit for a total of at least two hours, but less than four hours in an eight-hour workday, and noted that Plaintiff could lift and/or carry less than ten pounds. R. 366-377. Dr. Koenig opined that Plaintiff had the following manipulative limitations: reaching in all directions (including overhead) bilaterally – never; handling (gross manipulation) bilaterally – occasional; fingering (fine manipulation) bilaterally – frequent; feeling (skin receptors) bilaterally – frequent. R. 367. Dr. Koenig explained that Plaintiff required positional changes to help relieve his symptoms because he "cannot remain standing or seated for more than a few minutes at a time, due to severe low back pain from arthritis and disk disease, which causes r[ight] leg pain and weakness." R. 367. Dr. Koenig offered the opinion that Plaintiff would not be able to sustain a full-time work schedule with his symptoms, and that Plaintiff would be absent from work three or more times per month due to his impairments and/or treatment. R. 368. In support of that opinion, Dr. Koenig stated:

> P[atient] has severe low back pain with r[ight] leg weakness and pain, which precludes bending, reaching, lifting, or standing or sitting for more than a few minutes, before needing to reposition because of the pain. Additionally, he has urinary and bowel incontinence associated with his back conditions which always increases his urgency, and therefore limits his ability to perform work. He has severe pain that precludes effectively working.

R. 368.

In discussing and rejecting Dr. Koenig's opinion, the ALJ stated:

Joseph Koenig, M.D. saw the claimant from February 2013 through July 25, 2014. His visits were mainly for his right ankle pain, back pain and diabetes. The claimant fell in July 2014 and injured his right ankle. The symptoms were aggravated by movement and weight bearing. His back pain started with a fall in the military. The current episode started more than a year prior to July 2014. The pain was in the lumbar spine. The symptoms were aggravated by standing, twisting, stress, position and bending. The claimant stated that stiffness was present all day. His diabetes was stable at the time. (Exhibit 2F).

Dr. Koenig saw the claimant again on October 14, 2015. Upon examination, the claimant has tenderness and decreased range of motion in the cervical spine. In the lumbar spine, he exhibited decreased range of motion, tenderness, pain and spasm. He was neurologically intact. In addition, he had a normal mood and affect with normal behavior. Dr. Koenig diagnosed the claimant with, diabetes mellitus with neurological manifestations, uncontrolled; mixed hyperlipidemia; cervicalgia; pain in joint, ankle and foot, right; and bilateral low back pain with right-sided sciatica (Exhibit 5F).

Dr. Koenig also completed a medical source statement on the same date. He indicated that the claimant would be restricted to a less than sedentary exertional level. Dr. Koenig stated that the claimant had severe low back pain with right leg weakness and pain, which precluded bending, reaching, lifting, standing or sitting for more than a few minutes before having to reposition. In addition, he stated that the claimant had urinary and bowel incontinence associated with his back condition. Also, he stated that the claimant would miss three or more days of work per month and that his severe pain would preclude working (Exhibit 4F).

Dr. Koenig, M.D. completed a physical medical source statement on October 14, 2015. He opined that the claimant would be reduced to a less than sedentary exertional level due to his impairments. *This is contradicted by the actual exams in the file. His own examination on October 14, 2015, showed no more than decreased range of motion and tenderness in the back, his reflexes were normal as well as his coordination and there was no mention of a problem with his hands (Exhibit 5F, page 7). Therefore, Dr. Koenig's opinion is given no weight (Exhibit 4F).*

R. 15, 17 (emphasis added).

The undersigned concludes the ALJ failed to give "good reasons" or "legitimate reasons"

in the decision for rejecting Dr. Koenig's opinions. *See* 20 C.F.R. § 404.1527(c)(2). After

reviewing all of Plaintiff's medical records,[4] it is unclear to the Court how Dr. Koenig's opinion is contradicted by "the actual exams in the file," as noted by the ALJ. The record consistently shows problems with Plaintiff's back, back pain, muscle spasms, cervical neck pain, problems with diabetes, and other medical conditions. *See* R. 334, 336, 338, 347, 349, 354, 356, 358, 360, 370, 375, 377, and 522. Although the ALJ states that the October 14, 2015, visit "shows no more than decreased range of motion and tenderness in the back, his reflexes were normal as well as his coordination and there was no mention of a problem with his hands," the same record reveals contrary, probative evidence that the ALJ did not discuss. R. 377. The ALJ failed to discuss page eight of the same exhibit, which shows that Dr. Koenig had access to Plaintiff's Veterans' Administration Medical Center records, showing coordination of care; discusses Plaintiff's "neck pain, which improved a bit w[ith] surgery, but [Plaintiff] is still unable to lift, twist, or bend without a lot of pain"; and discusses Plaintiff's "low back pain with R[ight] leg weakness and pain, which precludes [Plaintiff] sitting or standing for more than just a few minutes at a time without having to reposition, and his associated incontinence of bladder and bowel, which further limits his ability to work as a trainer of other workers." *Id.* Dr. Koenig's physical examination showed decreased ranges of motion in both Plaintiff's neck and lumbar spine with pain and spasm. R. 376. Emergency treatment records at Bailey Medical Center for a kidney stone also show that Plaintiff had a CT scan on February 4, 2016 for that pain complaint. R. 522. The CT scan showed further degenerative changes of the spine which the ALJ did not discuss. *Id.* The ALJ failed to discuss this evidence. Accordingly, the Court finds the ALJ's reasons for rejecting Dr. Koenig's opinions

---

[4] The majority of Plaintiff's medical care was delivered by Dr. Koenig and the Veterans' Administration Medical Center. *See* R. 232-327, 333-361, 366-368, 370-379, and 380-468. Plaintiff's remaining medical records are emergency room records from Bailey Medical Center for treatment of a kidney stone. R. 469-531.

are not legitimate or supported by the record, and that the ALJ used portions of the medical record evidence favorable to his decision while ignoring other probative evidence.

The Commissioner argues that the ALJ "properly considered the opinions of Janet Rodgers, M.D., and David Coffman, M.D., that Plaintiff could perform light work with hearing limitations." ECF No. 17 at 6. This argument is not persuasive and is not supported by the record. Dr. Rodgers opined on July 28, 2015, that due to Plaintiff's "joint dysfunctions and diabetes, he would be able to perform at the **less than light** exertional level, with limited hearing in both ears," and noted on August 26, 2015, after no changes in condition or treatment Dr. Coffman "took into account the maximum limitations for [Plaintiff's] allegations and conditions, including pain and obesity," and adopted Dr. Rodger's opinion. The ALJ gave both opinions "considerable weight," except the hearing limitation. R. 16 (emphasis added). Although the ALJ gave these opinions considerable weight, the RFC provides that Plaintiff can perform at the "light" exertional level rather than "less than light," as found by the agency doctors. Not only did the ALJ fail to give good reasons for discounting Dr. Koenig's opinion, the RFC is not consistent with the opinions he afforded considerable weight.[5] The Commissioner also attempts to salvage the ALJ's opinion weight by pointing to more visit notations and anecdotal mentions throughout Plaintiff's Veterans' Administration visits. However, like the ALJ, the Commissioner cites only portions of the record that support a finding of not disabled while ignoring the findings of the treating physician.

The Court also concludes that the ALJ's error is not harmless. Harmless error doctrine applies only in the "exceptional circumstance" where the court could confidently say that no

---

[5] Drs. Rogers and Coffman also found postural limitations, and it is unclear why the ALJ excluded those limitations. The only limitation the ALJ specifically rejected is the hearing loss. Although Plaintiff did not raise an issue with these opinions, the ALJ may wish to review the opinions on remand for clarity.

reasonable administrative factfinder could have resolved the factual matter in any other way. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). To the extent any harmless-error determination "rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action." *Id.* Here, Dr. Koenig's opinion reflects limitations beyond those considered in the RFC. Specifically, stand and/or walk for a total of less than two hours of an eight-hour workday, sit at least two hours, but less than four hours of an eight-hour workday, and lift and/or carry less than ten pounds. R. 366-367. If the ALJ were to include such limitations, the VE testified all work would be precluded. R. 36.

## V.        Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order. On remand, the ALJ should properly consider the relevant opinions from Plaintiff's treating physician, Dr. Koenig, and any other opinion evidence as necessary, and properly explain the reasons for the weight given to each opinion.

**SO ORDERED** this 17th day of September, 2019.


_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**